UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW COLBERT GIAUME,<br><br>Plaintiff,<br><br>-against-<br><br>MONTAUK HM LLC d/b/a MONTAUK YACHT CLUB,<br><br>Defendant | **COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff Andrew Colbert Giaume, by and through his counsel Giles Law Firm LLC, complains of defendant as follows:

## NATURE OF ACTION

1. Plaintiff Andrew Colbert Giaume was recruited for, and offered, employment with defendant as Director of Food and Beverage at defendant's luxury resort. That offer was revoked based on erroneous information in a background check which inaccurately described the disposition of certain criminal charges against plaintiff, including one dating back as far as 2007 from which plaintiff was granted a Certificate of Relief from Disabilities.

2. Defendant relied on the inaccurate background check in revoking plaintiff's offer of employment. In doing so, defendant failed to provide legally required notice of the report on which it was basing its decision. Defendant also failed to follow the standards and procedures required under New York State and New York City law for evaluating whether plaintiff's prior charges could be used to revoke its offer of employment to plaintiff.

3. Upon learning of the information in the background check, plaintiff immediately contacted the background check service to dispute the information in its report. The background check service agreed that the information in its report was erroneous, and issued a corrected report

which included removal of one charge from the report, and reduction of one charge from a felony to a misdemeanor.

4. Despite the corrected report, defendant stood by its revocation of plaintiff's employment even though it was based on information in the background check that had since been removed. Plaintiff therefore brings this action for violations of the Fair Credit Reporting Act, the New York State Human Rights Law, and New York City Human Rights Law.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because this action arises under the laws of the United States, specifically the Fair Credit Reporting Act, 15 U.S.C. §§1681 et seq.

6. This Court has supplemental jurisdiction over plaintiff's state and local law claims pursuant to 28 U.S.C. §1367 because plaintiff's state law claims form part of the same case or controversy as Plaintiff's federal claims.

7. Venue in this district is appropriate pursuant to 28 U.S.C. §1391 because defendant maintains its principal place of business in, does business in, and has designated an address located in this District for service of process and, accordingly, resides in this District.

## PARTIES

8. Plaintiff Andrew Colbert Giuame is an individual who resides in New York County in the State of New York.

9. Defendant Montauk HM, LLC d/b/a Montauk Yacht Club ("MYC") is a limited liability company registered under the laws of New York.

## FACTUAL ALLEGATIONS

10. Plaintiff is an experienced professional in the hospitality business with extensive experience in opening and managing luxury restaurants and bars in New York.

11. Defendant is a luxury waterfront resort located in Montauk, New York.

12. In the summer of 2025, plaintiff interviewed for the position of Director of Food and Beverage Director with defendant.

13. Plaintiff participated in eight interviews and stayed overnight at the property.

14. Plaintiff was informed afterwards that although the interviews went well and defendants wanted to hire him, defendant did not have the budget for the role at that time.

15. In January of 2026, plaintiff was contacted by Omar Abreu, General Manager of defendant, and invited to interview again for the Director of Food and Beverage position.

16. On February 10, 2026, after another set of interviews with Defendant's representatives, defendant offered plaintiff the job of Director of Food and Beverage. Abreu advised plaintiff that he would be hired starting March 2, 2026, after additional paperwork and what he described as a "standard background check."

17. That day, plaintiff contacted Nick Moore, defendant's human resources representative, to advise him of a pending criminal matter in which he was charged in Indianapolis that he advised would likely appear on any background check. Specifically, plaintiff was charged with a felony for allegedly assisting a friend who stole a set of collectible cards from a table top gaming convention. Plaintiff was alleged to have assisted his friend transport what his friend had stolen by helping him move a pallet of cards to his automobile. Plaintiff was unaware that his friend had stolen the cards in question.

18. Plaintiff was originally charged with a Class 5 felony under the law. That charge was later reduced to a misdemeanor with time served (one day in jail with credit for one day) and expungement within a year. Plaintiff currently has a pending lawsuit in New York State Supreme Court against the former friend who falsely implicated him in the crime. That case is pending.

19. Plaintiff advised Moore of the details of the pending matter and that the felony charge would be reduced to a misdemeanor that would be expunged within one year.

20. Moore advised plaintiff the next day that he did not think the pending criminal matter would be a problem. Moore then called plaintiff back after consulting with defendant's Human Resources officials and told plaintiff it would not be an issue. Morre further advised plaintiff to submit his information for the background check after receiving the formal offer for the position.

21. Plaintiff received a formal offer letter for the position on February 11, 2026. Plaintiff signed the offer letter on February 12, 2026.

22. Plaintiff then submitted his details to PreciseCheck, the background check service used by Defendant.

23. Although plaintiff was told by defendant that his start date would be March 2, 2026, he was asked to start performing work for defendant almost immediately after receiving his offer. Plaintiff attended several meetings and interviews, and reviewed and prepared proposals concerning defendant's food and beverage operations for the summer season.

24. Abreu asked plaintiff to keep time records of the work he performed so he could receive compensation for his work.

25. On or about February 16, 2026. Abreu informed plaintiff that his start date would be moved up to February 23, 2026.

26. On February 20, 2026, plaintiff received a notification from PreciseCheck that "an important legal notice" from defendant was available in defendant's Applicant Portal.

27. Plaintiff accessed the applicant portal, which contained the results of his background check.

28. The background check included incomplete information concerning plaintiff's pending matter, specifically omitting that plaintiff had reached the plea deal to reduce the charge to a misdemeanor and that plaintiff would be sentenced only to time served.

29. The background check also included incomplete information concerning a prior criminal matter from 2007.

30. Specifically, plaintiff, when he was nineteen years old performed as a rock musician and maintained various social media profiles where he promoted his music, including clips and samples of his songs and lyrics. Plaintiff occasionally sent direct messages to fans including his music.

31. One follower of plaintiff was a minor. The minor falsely spread a rumor that she was in a relationship with plaintiff.

32. Plaintiff was originally charged by prosecutors of having an intimate relationship with the individual in question, which would constitute statutory rape due to her age. After over three years of plaintiff maintaining his innocence and demonstrating that he had no relationship with the individual in question, plaintiff ultimately resolved his criminal case by pleading guilty to one count of Attempted Disseminating Of Indecent Material to a Minor.

33. Plaintiff did not serve any jail time and was instead sentenced to five years of probation. The Court also immediately issued plaintiff a Certificate of Relief From Disabilities.

34. Pursuant to New York State Correction Law §701, a Certificate of Relief From Disabilities relieves the recipient from any bar to employment, licensing, or other rights and privileges that a criminal conviction would otherwise carry.

35. That same day, plaintiff contacted defendant's human resources office to explain the circumstances of the 2007 matter, and also provided a copy of his Certificate of Relief From Disabilities.

36. On February 21, 2026, Abreu contacted plaintiff on behalf of defendants and informed him there was "an issue" with his background check and that defendants would delay his start date of February 23, 2026 until the human resources department had an opportunity to "fix the situation."

37. Defendant did not, however, provide plaintiff with the notice required by 15 U.S.C. §1681b, which requires that before taking any adverse action based on a consumer report, including a background check, that the employer provide the subject of the report with a copy of the report, and notice of plaintiff's rights under the Fair Credit Reporting Act, 15 U.S.C. §§1681 et seq.

38. Plaintiff made multiple attempts to contact Abreu to receive updates on the "issues" Abreu had referred to, but received no response from Abreu or any other representative of defendant.

39. On March 2, 2026, Plaintiff received an email from defendant thanking him for applying for the Director of Food and Beverage position, but "We regret to inform you that we have filled this position."

40. It was not until March 5, 2026, that plaintiff received correspondence from defendant entitled "Pre-Adverse Action Notification" advising him of their intent to take adverse

action based on the PreciseCheck background report, and advising him of his rights to dispute the contents of the report.

41. The March 5, 2026 notification further stated that defendant would delay taking adverse action for seven days from the date of the notification. Defendant, however, had already taken the adverse action against plaintiff by rescinding its employment offer on March 2, 2026.

42. Upon receipt of the March 5, 2026 notice, plaintiff sent PreciseCheck information concerning the matters referenced in the PreciseCheck report. Plaintiff provided PreciseCheck with his Certificate of Relief from disabilities and the plea agreement for the pending matter in Indiana.

43. On March 13, 2026, plaintiff received an email from PreciseCheck concerning his dispute of the items in the PreciseCheck report.

44. PreciseCheck advised plaintiff that based on the information he submitted, plaintiff's dispute was valid, and that PreciseCheck was correcting its prior report.

45. Specifically, PreciseCheck advised that it was removing the 2007 conviction entirely from its report, and updating the 2025 matter to reflect the plea agreement and disposition of the matter, reducing the charge from felony theft of property to misdemeanor criminal trespass.

46. Despite the corrected report and notice to defendant, defendant did not offer plaintiff the position for which it originally hired him prior to receiving the first inaccurate PreciseCheck report.

47. Plaintiff not only lost his employment opportunity with defendants, but had lost any employment opportunity for the entire summer season in the luxury hospitality industry, as employers in the industry recruit and hire for positions such as plaintiff's months in advance to prepare for the summer high season.

**FIRST CLAIM**

**FRCA – Failure to Provide Pre-Adverse Action Notice**

48. Plaintiff repeats and re-alleges the allegations set forth at paragraphs "1" through "47" as if fully set forth herein.

49. Pursuant to the FRCA, prior to taking any adverse action based in whole or in part on a consumer report, a person shall provide to the consumer a copy of the report and a description in writing of the rights of the consumer under the FRCA. 15 U.S.C. §1681b(b)(3).

50. Defendant is a "person" within the meaning of 15 U.S.C. §1681a(b).

51. Defendant took adverse action based on information contained in the PreciseCheck report no later than March 2, 2026, when it rescinded plaintiff's offer of employment.

52. Defendant did not provide plaintiff with a copy of the report prior to taking the adverse action against plaintiff.

53. Defendant did not provide plaintiff with a written description of his rights under the FCRA prior to taking adverse action against plaintiff.

54. Defendant's violations of 15 U.S.C. §1681b(b)(3) were willful in that defendant knowingly and intentionally failed to comply with the statute's requirements, or acted with reckless disregard of its obligations under the statute.

55. Defendant rescinded plaintiff's offer of employment based on information in the credit report which PreciseCheck confirmed should not have been in the report.

56. As a result of defendant's unlawful acts, plaintiff has suffered actual damages including lost compensation, reliance damages, damages to reputation, emotional distress, and humiliation.

## SECOND CLAIM

**New York State Human Rights Law**

57. Plaintiff repeats and realleges the allegations set forth at paragraphs "1" through "56" as if fully set forth herein.

58. Pursuant to the New York State Human Rights Law, it is an unlawful discriminatory practice for any corporation or association to deny any license or employment to any individual by reason of his or her having been convicted of one or more criminal offenses, or by reason of a finding of a lack of good moral character, which is based upon his or her having been convicted of one or more criminal offenses, when such denial is in violation of the provisions of article twenty three-A of the New York State Corrections Law. N.Y. Executive Law §296(15).

59. Defendant is a corporation or association within the meaning of New York Executive Law §296(15).

60. New York Corrections Law Article 23-A prohibits discrimination against persons previously convicted of one or more criminal offenses and requires employers to consider enumerated factors.

61. Section 752 of the New York Corrections Law provides that no application for license or employment shall be denied by reason of the individual having been previously convicted of one or more criminal offenses unless there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held, or the issuance or continuation of the license or granting or continuation of employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.

62. Section 753 of the Correction Law requires that in making such a determination under section 752, the employer shall consider the following factors:

> (a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.
>
> (b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.
>
> (c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.
>
> (d) The time which has elapsed since the occurrence of the criminal offense or offenses.
>
> (e) The age of the person at the time of occurrence of the criminal offense or offenses.
>
> (f) The seriousness of the offense or offenses.
>
> (g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.
>
> (h) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.

N.Y. Corrections Law §753(1)

63. New York Correction Law Article 23-A further provides that in making its determination, an employer shall give consideration to whether a Certificate of Relief From Disabilities has been issued to the applicant for employment.

64. Defendant rescinded its offer to plaintiff based on the information in the PreciseCheck background check, specifically his 2007 conviction.

65. Defendant did not determine whether plaintiff's employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public when rescinding plaintiff's employment.

66. Defendant did not take into consideration any of the factors set forth in Section 753 of the New York Corrections Law when rescinding plaintiff's employment.

67. Defendant did not take into consideration plaintiff's Certificate of Relief from Disabilities when rescinding plaintiff's employment.

68. Defendant unlawfully discriminated against plaintiff in violation of N.Y. Executive Law §296(15).

69. Defendant's violations were willful in that defendant knowingly and intentionally failed to comply with the requirements of either Article 23-A of the Correction Law or the New York State Human Rights Law, or acted with reckless disregard of its obligations under those statutes.

70. As a result of defendant's unlawful acts, plaintiff has suffered actual damages including lost compensation, reliance damages, damages to reputation, emotional distress, and humiliation.

## THIRD CLAIM

### New York City Human Rights Law

71. Plaintiff repeats and realleges the allegations set forth at paragraphs "1" through "70" as if fully set forth herein.

72. Prior to plaintiff's official start date, he performed work in preparation for the summer season at defendant's request.

73. Plaintiff performed all such work in New York City.

74. The New York City Human Rights Law prohibits discrimination in employment by an employer based on an employee being convicted of one or more criminal offenses without

considering the factors enumerated in Article 23-A of the Correction Law. N.Y.C. Admin. Code §8-107(10).

75. The New York City Human Rights Law prohibits an employer from taking any adverse action against either an employee or an applicant for employment based on an arrest or conviction record unless the employer:

a. Requests from the employee, or applicant, information relating to the enumerated factors in Article 23-A of the Correction Law;

b. Performs an analysis based on the enumerated factors in Article 23-A of the Correction Law, and whether granting or continuing employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public;

c. Provides a written copy of such analysis to the employee or applicant that includes supporting documents that formed the basis for the adverse action; and;

d. Allows the employee or applicant a reasonable time, but no less than five days, to respond, and holds the position open for the applicant or refrains from adverse action against the employee.

N.Y.C. Admin. Code §8-107(11-a)(b) (as to applicants); §8-107(11-a)(c) (as to employees).

76. Defendant is an "employer" as defined in N.Y.C. Admin. Code §8-102.

77. Plaintiff resided in New York City when he applied for employment with defendant, was offered employment with defendant, was subjected to a background check by defendant, and while he performed preliminary work for defendant.

78. Defendant rescinded its offer to plaintiff based on the information in the PreciseCheck background check, specifically his 2007 conviction.

79. Defendant did not determine whether plaintiff's employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public when rescinding plaintiff's employment.

80. Defendant did not request from plaintiff any information relating to the enumerated factors in Article 23-A of the Correction Law.

81. Defendant did not take into consideration any of the factors set forth in Section 753 of the New York Correction Law when rescinding plaintiff's employment.

82. Defendant did not take into consideration plaintiff's Certificate of Relief from Disabilities when rescinding plaintiff's employment.

83. Defendant did not provide plaintiff with a written copy of any analysis with supporting documentation.

84. Defendant did not provide plaintiff an opportunity to respond before taking adverse action against plaintiff.

85. Defendant unlawfully discriminated against plaintiff in violation of N.Y. Admin Code §8-107.

86. Defendant's violations were willful in that defendant knowingly and intentionally failed to comply with the requirements of either Article 23-A of the Correction Law or the New York City Human Rights Law, or acted with reckless disregard of its obligations under those statutes.

87. As a result of defendant's unlawful acts, plaintiff has suffered actual damages including lost compensation, reliance damages, damages to reputation, emotional distress, and humiliation.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully asks that this Court enter a judgment:

a) Declaring that defendant is in violation of the Fair Credit Reporting Act, the New York State Human Rights Law, and the New York City Human Rights Law;

b) Awarding plaintiff all lost wages and benefits resulting from defendants' revocation of his offer of employment;

c) Awarding plaintiff compensatory damages for emotional distress, humiliation, and damage to reputation;

d) Awarding plaintiff punitive damages for willful violations of the Fair Credit Reporting Act, the New York State Human Rights Law, and the New York City Human Rights Law;

e) Awarding plaintiff statutory damages of $1,000.00 per violation pursuant to the Fair Credit Reporting Act.

f) Awarding plaintiff appropriate equitable relief, including but not limited to reassignment, front pay in lieu of reinstatement, and injunctive relief prohibiting further violations of the Fair Credit Reporting Act, the New York Stare Human Rights Law, and the New York City Human Rights Law;

g) Awarding plaintiff the costs and attorneys fees incurred in this action; and

h) Such further relief as this Court may deem just and proper.

Dated: New York, New York
November 17, 2026

Respectfully submitted,

GILES LAW FIRM LLC
Attorneys for Plaintiffs
*Joshua Parkhurst*
Joshua Parkhurst
85 Broad Street, 17th Floor
New York, NY 10004
(201) 577-2644
jparkhurst@gileslawfirmllc.com

**JURY DEMAND**

Plaintiff hereby demands, pursuant to Rule 38 of the Federal Rules of Civil Procedure, a trial by jury in the above captioned action.